PENNY v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed October 27, 1903.)

1. CARRIERS—*Passengers—Negligence—Personal Injuries.*

A railroad company must notify passengers of danger if the same is or should be known to its employees.

2. PLEADINGS—*Variance—Allegata et Probata.*

To allege one person to be the conductor, whose duty it was to warn a passenger of danger, and the proof shows that a different person was the conductor, is an immaterial variance.

ACTION by B. F. Penny against the Atlantic Coast Line Railroad Company, heard by Judge *R. B. Peebles,* at February Term, 1903, of the Superior Court of NEW HANOVER County. From a judgment of non-suit the plaintiff appealed.

*E. K. Bryan* and *Bellamy & Bellamy,* for the plaintiff.

*Junius Davis, John D. Bellamy* and *Rountree & Carr,* for the defendant.

MONTGOMERY, J. The evidence in this case was that in September, 1898, the conductor, Carmon, of the defendant's train made an assault upon a passenger, Sam Calloway, a few miles from Wilmington; that a man by the name of LaMotte, who was also in the service of the defendant company, but in another State, took part in the assault; that Van Amringe, the baggage master on that train, witnessed the

assault and armed himself with a pistol; that Calloway was "quieted" and searched for weapons, but none were found; that when the train arrived at a station called Leland, Calloway having reached his destination, in leaving the second class car, was followed by LaMotte to the platform, when Calloway said to him: "What are you going to do?" that LaMotte called for a pistol, and one was given to him by Van Amringe; that LaMotte tried to shoot Calloway, who was retreating with his face to LaMotte alongside and a little off from the first class coach; that Van Amringe was standing at the brake on the front platform of the first class coach, and Carmon on the platform of the first class coach; that Van Amringe and Carmon saw, or could have seen, what was going on; that just at that time the plaintiff, intending to get off, came out of the second class car, walked by LaMotte and across to the platform of the first class car and then down the steps between Van Amringe and Carmon, and upon reaching the bottom step was shot and badly hurt by Calloway, who had fired at LaMotte. Van Amringe testified that as Calloway retreated LaMotte leveled the pistol at Calloway and snapped it two or three times before Calloway got his pistol out and opened fire; that he saw Calloway with the pistol, and that Carmon could have seen it if he had looked. Van Amringe further testified that neither he nor Carmon notified or warned the plaintiff of his danger, and that the reason he did not was that he did not think—"a person can't think of everything on an occasion like that." The plaintiff testified that he was not noticing anything as he was getting off, and did not know that he was in any danger.

Upon an intimation of his Honor that the plaintiff could not recover on the evidence, he submitted to a non-suit and appealed. The evidence, then, for the present discussion, is to be taken as true, and in the strongest light for the plaintiff. That being so, it is evident that it was the purpose of La-

Motte to kill the man Calloway, whom he thought to be help-
less and unarmed; that Van Amringe knew the purpose of
LaMotte and furnished him with the instrument of death;
and Van Amringe said that Carmon, from where he was
standing, could see the negro, Calloway—"he could have
seen him, for we all saw what was going on, and I suppose he
did." I did not say he did see him."

There is but one question in the case: Did the defendant
owe the duty to the plaintiff to warn him as to the danger of
the situation? If Calloway had intended to make the assault
directly upon the plaintiff, the duty of the defendant would
have been to have protected him to the extent of its ability,
as is so clearly laid down in *Britton v. Railroad,* 88 N. C.,
536; 43 Am. Rep., 749. Up to the time that case was de-
cided it seems that there was no express decision of this
Court on the duty of a common carrier on the subject of the
protection of passengers against assaults of their fellow pas-
sengers or strangers, but the Court there said: "According to
the uniform tendency of these adjudications (decisions of
other courts), which we admit as authorities, the carrier owed
to the passenger the duty of protecting him from the violence
and assaults of his fellow passengers or intruders, and will
be held responsible for his own or his servant's neglect in this
particular, when by the exercise of proper care the acts of vio-
lence might have been foreseen and prevented; and while
not required to furnish the police force sufficient to overcome
all force when unexpectedly and suddenly offered, it is his
duty to provide ready help sufficient to protect the passenger
against assaults from every quarter which might reasonably
be expected to occur under the circumstances of the case and
the condition of the parties."

This was not a direct assault by Calloway upon the plain-
tiff, who was a passenger on the defendant's train when he
was shot by Calloway, but we think that in law the carrier's

duty would be as clear to warn and give notice to an alighting passenger who was in danger of being injured by violence at the hands of outside parties as it would be to protect them against assaults at the hands of others. It seems to us that the same rule would apply in both cases. The defendant was charged with the plaintiff's safe exit under the rule laid down. The imminence and suddenness of the danger, as well as the strength and numbers of those offering violence to passengers, would be matters to be considered by the jury in connection with the carrier's duty.

In this case, however, the evidence discloses culpability on the part of the defendant, in that Van Amringe, the baggage master, without any excuse of matter of extenuation, brought about the act of violence by which the plaintiff was injured, and, according to his evidence, the conductor, Carmon, knew or might have known what was going on.

In the complaint it was alleged that LaMotte was the conductor of the train, and through his negligence in failing to notify the plaintiff of his danger, the plaintiff was injured, while the evidence shows that Carmon was the conductor. That is immaterial, for the evidence discloses a case of negligence on the part of the defendant, and it makes no difference that Carmon was the conductor instead of LaMotte, as was alleged in the complaint. And, besides, the evidence was not objected to by the defendant. *Robeson v. Hodges,* 105 N. C., 49.

Error.