BROWN v. CHICAGO, R. I. & P. RY. CO.

(Circuit Court of Appeals, Eighth Circuit. August 5, 1905.)

No. 2,213.

CARRIERS—ASSAULT ON PASSENGERS—LIABILITY.

The liability or nonliability of the carrier of passengers for hire for an injury inflicted upon a passenger carried, by reason of a third person making an unprovoked assault upon him, depends upon the presence or absence of evidence showing the employés of the carrier either knew, or by the exercise of due care should have known, from all the attendant facts and circumstances of the particular case, that injury to the passenger carried was threatened or impending, and which injury, by the exercise of that high degree of care which the law requires of a carrier of passengers for their safety and protection, thus being foreseen, might have been guarded against.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, § 1125.]

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Minnesota.

J. A. Giantvalley (Walter L. Chapin, on the brief), for plaintiff in error.

McNeil V. Seymour (Edward C. Stringer, on the brief), for defendant in error.

Before VAN DEVANTER and HOOK, Circuit Judges, and POLLOCK, District Judge.

POLLOCK, District Judge. This is an action brought to recover damages for a personal injury sustained by plaintiff while riding as a passenger on one of defendant's regular passenger trains. The controlling facts are practically undisputed, and, stated in that light most favorable to the contention made by plaintiff, are: On the morning of August 10, 1902, plaintiff was a passenger ón one of the regular passenger trains on defendant's line of railway en route from Enid, in the territory of Oklahoma, via Kansas City, Mo., to his home in Brookfield, Mo. When the train arrived at the breakfast station of Caldwell, in the southern part of the state of Kansas, a cowboy in a state of partial intoxication boarded the train with a ticket for Corbin, a small station about seven miles north of Caldwell, and entered the same car in which plaintiff and many other passengers were riding. At the time he entered the coach he was using and continued to use profane and abusive language. The train conductor, while engaged in the performance of his duties in another car, was informed of the conduct of this passenger, came into the car in which he was riding, and informed him he must stop

the use of such language or get off the train.  The schedule time of the train from the station of Caldwell to that of Corbin was about 12 minutes.  After the conductor had taken up the ticket of the intoxicated passenger, and as the train neared the station of Corbin, he took hold of the passenger and forcibly proceeded with him to the platform of the car, where a scuffle ensued between them.  At this time the passenger said to the conductor, prefacing the same with an oath, "I will get even with you."  When the train stopped at Corbin, the intoxicated passenger was ejected therefrom.  At this time plaintiff was sitting in the front seat of the day coach on the right-hand side of the car, by the window, playing with a little child.  As the drunken passenger alighted on the platform at the station, he at once stooped down and picked up a piece of burned gumbo, used at that place on the road as ballast, weighing about two pounds, and hurled it through the window at which plaintiff was sitting, intending thereby to strike the conductor who had removed him from the train, but instead thereof hitting plaintiff in the back of the head, rendering him unconscious, and injuring him to such an extent as to require his removal from the train at the station of Wellington.  This act of violence was suddenly entered upon and committed, and was apprehended neither by plaintiff nor the conductor of the train.  At the time plaintiff was a married man about 50 years of age, earning $3 per day.  As a result of the blow he was seriously injured, and brought this action against the railway company to recover his damages incident thereto, alleging his injury to have been received through the negligence of the defendant company, in that it failed to accord him that high degree of protection which the law requires of a carrier of passengers toward one carried, and that his injury occurred through the concurrent acts of the drunken passenger and the conductor of the train.  At the conclusion of the evidence the trial court directed a verdict for defendant.  The sole assignment of error is based on this ruling.

From a consideration of the facts as above stated, giving the plaintiff the benefit of every reasonable inference that may be drawn therefrom, and viewed in the light of that high degree of care which the law requires of the carrier of passengers for hire for the safety and protection of the passenger, we are of the opinion the ruling of the trial court is right, and must be affirmed.  The precise nature of the negligence charged against defendant is alleged in the petition as follows:

"That the plaintiff was injured by reason of the concurrent acts of defendant's conductor and the drunken man he expelled from the train in a very careless and negligent manner.  That the man ejected from the train, as above stated, was very mad, angry, drunken, unsafe, dangerous, violently desperate, and insane with rage, and it was the duty of the defendant to exercise the highest degree of care in protecting its passengers from the danger and injury which might result from the act of removing such man from its train.  That defendant failed to use proper care and precaution for the protection of this plaintiff against injury, in that the defendant's conductor did not, as is customary in cases of this kind, to protect the passengers, call a brakeman or any one else to assist him in removing the man from the coach and to the rear of the train."

It is thus seen the specific act of negligence charged against defendant is that the conductor of the train did not call to his aid the brakeman on the train, or other assistance, in removing the drunken, angry, and dangerous person from the train; whereas the violent act which resulted in injury to plaintiff arose after the removal of the intoxicated passenger from the train. It is, however, contended by counsel for plaintiff in argument that the conductor of the train should have apprehended the probability of danger to plaintiff, and was negligent in not guarding plaintiff against the same. Spangler v. Railway Co., 68 Kan. 47, 74 Pac. 607, 63 L. R. A. 634; Penny v. Atlantic Coast Line R. Co., 133 N. C. 221, 45 S. E. 563, 63 L. R. A. 497; West Memphis Packet Co. v. White, 99 Tenn. 256, 41 S. W. 583, 38 L. R. A. 427; Snow v. Fitchburg R. Co., 136 Mass. 552, 49 Am. Rep. 40; Indianapolis St. Ry. Co. v. Dawson (Ind. App.) 68 N. E. 909, and other cases are cited in support of this contention. An examination of these cases, however, will show their inapplicability to the facts in the case at bar. They all rest for their support upon antecedent facts leading up to the injury, of such character as to inform the conductor, or others in charge of the conveyance, that injury to the passenger would be attempted, of such nature as ordinary prudence might and should have guarded against, and by a failure to so act the carrier was negligent. Thus, in Spangler v. Railway Co., a case much relied upon by counsel for plaintiff, and in which the manner of inflicting the injury of which complaint was made was very similar to that in the case at bar, the court, after quoting with approval the rule laid down by Mr. Fetter in his work on Carriers of Passengers (volume 1, § 96) as follows: "Knowledge of the existence of the danger, or of facts and circumstances from which the danger may be reasonably anticipated, is necessary to fix a liability upon the carrier for damages sustained in consequence of failure to guard against it"—made application of the rule to the facts in that case in the following language:

"From the evidence relating to the character, condition, and conduct of the young men, it is reasonable to conclude that some depredation was to be committed upon the St. Joe passengers at Gower. It is fairly inferable that the conductor knew, or should have known, of this danger, and hence that he should have exercised the highest vigilance and diligence to subvert it; that he failed to employ to that end any of the means at his command; and that the plaintiff's injury was the result of his negligence."

In Penny v. Atlantic Coast Line R. Co., it is said:

"According to the uniform tendency of these adjudications (decisions of other courts), which we admit as authorities, the carrier owes to the passenger the duty of protecting him from the violence and assaults of his fellow passengers or intruders, and will be held responsible for his own or his servant's neglect in this particular, when by the exercise of proper care the acts of violence might have been foreseen and prevented."

In West Memphis Packet Co. v. White, which was an accidental injury by one passenger inflicted upon another, it is held:

"The owner of a steamboat is required to exercise the utmost vigilance and diligence in protecting its passengers from injuries from another passenger by the negligent and careless use of a loaded gun exhibited by him, where, under all the circumstances, such owner or his officers and agents might reasonably have expected or anticipated the injury."

In Snow v. Fitchburg R. Co., in which a passenger standing on a depot platform awaiting the arrival of his train was injured by being struck by a mail bag thrown from the train in accordance with the custom known to the corporation, it is said:

"There was evidence in the case tending to show that mail bags had not infrequently been thrown from this car in such a way as to strike upon the platform where the plaintiff stood; and, if this evidence was believed, the court was justified in inferring that the defendant knew, or in the exercise of proper care ought to have known, this. It was within the power of the defendant to prevent this practice of throwing out mail bags, if in no other way, by withholding the use of the car, or by stopping the train at the station. The case presented is unlike that of the act of a passenger, which the defendant had no reason to anticipate or power to prevent."

In the case of Indianapolis St. Ry. Co. v. Dawson it is held:

"Where a street railway, owning a park reached by its lines and maintaining attractions for the public there, has knowledge that there is a conspiracy on the part of certain persons to assault any colored persons visiting the park, and knows of acts of violence committed pursuant to such design, and transports colored persons there without warning them of the danger, and they are assaulted pursuant to the conspiracy, the company's employés making no attempt to interfere, the railway company is liable for the injuries."

In Meyer v. St. Louis, I. M. & S. Ry. Co., 54 Fed. 116, 4 C. C. A. 221, in which case one passenger was shot and killed by an insane passenger, and in which there was evidence tending to show the employés of the defendant company in charge of the train knew before the act happened of the insanity of the passenger committing the deed, this court ruled:

"The railroad would not be negligent by reason of nonaction, if its employés, exercising the high degree of care demanded of them, could not have reasonably anticipated the effect of failure to restrain or eject such insane passenger."

"To charge the defendant company with the duty of restraint, it need not necessarily have been foreseen that the killing would take place, unless for such restraint. If a reasonable possibility of injury to any one of the passengers could have been foreseen, the obligation arose to take proper action for their protection, although it could not be anticipated which one of the passengers might be injured by such insane person, nor whether his violence would cause death or not."

In the light of authority, and in the very reason of things, the liability or nonliability of the carrier of passengers, in cases of this nature, must be held to depend upon the presence or absence of evidence tending to show the employés of the defendant carrier either knew, or by the exercise of due care should have known, from the circumstances of the particular case, injury to the passenger was threatened or impending, which injury, by the exercise of that high degree of care which the law requires of a carrier of passengers for the safety and protection of the passenger, might not only have been foreseen, but guarded against, thus averting the injury. The foregoing cases and others relied upon by counsel for plaintiff were ruled in favor of the liability of the carrier, but, as has been seen, in recognition of this principle. Felton, Adm'r v. Chicago, Rock Island & Pacific Ry. Co., 69 Iowa, 577 29 N. W. 618; Fewings v. Mendenhall, 88 Minn. 336, 93 N. W. 127, 60 L. R. A. 601, 97 Am. St. Rep. 519; Putnam v. Broadway & Seventh Ave. R. R. Co., 55 N. Y.

108, 14 Am. Rep. 190. And in the many other cases cited by counsel for the defendant the nonliability of the defendant was adjudged upon this ground.

Applying this principle to the facts in the case at bar, as stated, the nonliability of the defendant follows, and follows for the reason that the act of violence resulting in injury to the plaintiff was suddenly entered upon and committed, entirely unapprehended and unforeseen by any one, and was in its nature and manner of execution of such character, in the light of attending circumstances, as to be clearly unexpected.

The judgment of the Circuit Court must be affirmed.