R. E. BROWN v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 26 March, 1913.)

1. Carriers of Passengers—Negligence—Duty of Conductor—Assault on Passenger—Anticipation of Assault—Protection of Passengers.

A conductor on a railroad passenger train is held to a high degree of care in looking after and protecting passengers on his train, and he is clothed, to some extent, with the powers of a peace officer; and if he fails to act in certain instances it may be imputed to the company's wrong; and it is held that, by reason of these exigent duties and of his right to protect himself in emergencies, a right present in negligence as well as in other cases, he is not always required to await developments or remain inactive until there is some overt act by a passenger importing a present physical menace either to himself or the other passengers; but in view of all the facts known or as they may reasonably appear to him, he may at times interfere to prevent or forestall violence.

2. Same—Damages—Justification of Conductor—Evidence.

In an action to recover damages, of a railroad company for an assault upon the plaintiff, a passenger, as he was leaving the train, there was evidence tending to show, and *per contra*, that the plaintiff's conduct on the train was improper; that he did not give his ticket to the conductor, who required him to pay his cash fare, whereupon the plaintiff threatened the conductor when he reached his destination; that passengers warned the conductor to look out for the plaintiff at his destination, that he was armed with a pistol; and that the conductor had other

employees of the road present at the steps of the car at the station where passengers were alighting; that as plaintiff was getting off the train, with a bundle under his arm, he was seized by the other employees and searched by the conductor for a weapon, which he failed to find; that the manner of the search made by the conductor was by passing his hands over the plaintiff's clothes, gently slapping the pockets; that after the plaintiff was released he assaulted the conductor, resulting in being knocked down by him, and for which assault the plaintiff seeks to recover the damages alleged: it is *Held*, that an instruction that the jury find for the plaintiff if they believe the evidence is erroneous, for it was a question for the jury to determine, in view of the facts as they reasonably appeared to the conductor, whether he was justified in seizing and searching the plaintiff as he was alighting from the train.

3. Verdict, Directing — Evidence, How Considered — Defendant's Rights — Contradictory Evidence — Negligence—Evidence—Appeal and Error.

Where the trial judge directs the jury to find for the plaintiff if they believe the evidence, the whole evidence should be considered in the light most favorable to the defendant; and though it may appear from the examination, in part, of defendant's own witnesses, that the instruction may have been correct, it will be held for error if taking the evidence as a whole there was sufficient to constitute the defense relied on by him.

ALLEN, J., dissenting; CLARK, C. J., concurring in the dissenting opinion.

APPEAL from *Carter, J.,* at January Term, 1913, of PENDER.

Civil action to recover damages for wrongful injuries to the person.

The evidence of plaintiff tended to show that on 7 March, 1910, he was a passenger on defendant's train, having purchased and holding a ticket from Wilmington, N. C., to Rocky Point. That after the conductor had taken up plaintiff's ticket, plaintiff went forward to the smoker, and was again forced to pay his fare under threat of being ejected from the train, the conductor insisting that no ticket or fare had been collected from plaintiff. That after a verbal altercation, the conductor left the car and when the train stopped at Rocky Point, plaintiff's destination, and as he was endeavoring to alight, having some bundles in one arm, and when he stepped down on the plat-

form, he was seized by the baggageman, the porter, and another, and searched by the conductor. That plaintiff was then turned loose, and in the quarrel that ensued the conductor called plaintiff a liar, plaintiff said, "You are another," and he was then knocked down and beaten and injured by the conductor, to his great damage.

There was evidence offered by defendant in denial of plaintiff's right to recover, and on issues submitted the following verdict was rendered:

1. Did the defendant company, through its employees, assault and beat the plaintiff, as is alleged in the complaint? Answer: Yes.

2. Had the plaintiff's contract of carriage ended before he was assaulted? Answer: No.

3. What damage, if any, is the plaintiff entitled to recover? Answer: Five thousand dollars ($5,000).

On the first issue the court charged the jury as follows: "First. Did the defendant company, through its employees, assault and beat the plaintiff, as alleged in the complaint? It is not denied that upon the instant of the plaintiff leaving the train he was seized and held by authority and under the directions of the conductor for a space of a few seconds at least, and that while being so held his person was searched by the conductor by his feeling on the outside of the pockets of the plaintiff; and since in the opinion of the court the evidence fails to disclose any legal justification for the seizure of the plaintiff's person and the search made at that time, the court instructs the jury that if they believe the evidence they will answer the first issue 'Yes.'" Defendant excepted.

Judgment on the verdict for plaintiff, and defendant excepted and appealed.

*R. G. Grady and Herbert McClammy for plaintiff.*

*Davis & Davis, J. T. Bland, H. L. Stevens, and K. O. Burgwin for defendant.*

HOKE, J. It has been repeatedly held that on motion to nonsuit the evidence which makes for defendant's justification

or defense must be taken as true and interpreted in the light most favorable to him. *Deppe v. R. R.,* 152 N. C., 79; *Cotton v. R. R.,* 149 N. C., 229. The same rule is properly applied to a charge, "if the evidence is believed" or if the facts are as testified to, etc., and operates in favor of any litigant whose rights are adversely affected, whether plaintiff or defendant. Applying the principle, while the testimony of plaintiff, if accepted by the jury, clearly established an actionable wrong on the part of the conductor and employees, for which the defendant is responsible (*Stanley v. R. R.,* 160 N. C., 323; *Berry v. R. R.,* 155 N. C., 287, and *Hutchinson v. R. R.,* 140 N. C., 123), we think there was error in the portion of his Honor's charge above excepted to, and upon this feature of the case also and on the entire evidence the defendant is entitled to have the issue as to its liability referred to the decision of the jury.

Upon this question, a summary of the plaintiff's evidence has been heretofore given. On the part of the defendant, there was testimony tending to show that plaintiff had not given the conductor any ticket and failed and refused to exhibit one when asked for it, claiming that his ticket had been already taken up. That after discussing the matter, the conductor insisted on a ticket or payment of fare, and compelled the payment of the cash fare. That his manner was considerate and that of plaintiff was improper, and that he showed signs of being under the influence of whiskey; that when plaintiff paid the money to the conductor he told him that he would get even with him at Rocky Point, two of the passengers testifying that he said this with an oath; that when the conductor left the car after having told the plaintiff he would have to pay or be put off, or after he had paid, two passengers testified that they saw plaintiff move something from his hip pocket to the front pocket of his coat, and that the witness took it to be a pistol; that the witness informed conductor that he had better be careful and that he had seen plaintiff put a pistol in his coat pocket; that the conductor thanked him, and, going forward to the baggage car, told the baggageman about it, and asked him to come out and watch for him while he assisted the pas-

Brown v. R. R.

sengers in getting off; that this was done, and as plaintiff came down the steps some of the passengers called out, "Look out for that fellow; he has got a pistol," and as he got off the train the baggageman seized and held him, and when the passengers were helped off, the conductor went to him and searched him by putting his hand over the outside of plaintiff's pockets, and, finding nothing, told the baggageman he had nothing, to turn him loose, and signaled the train forward; that as it moved away, plaintiff made an assault on the conductor, struck him and kicked him, and the conductor struck him back, and in the fight knocked plaintiff down. The officer's own evidence as to what occurred after the fare was paid being as follows: "After we left the water tank at Castle Hayne he went in front of the platform in the door and commenced smoking cigarettes, and I told Brown it was objectionable to smoke there; to come back in the car; that it was against the rules to ride on the platform of the car. Brown said, 'You have too much to say.' I told him I was sorry he took it that way. Brown said, 'Well, that's all right; you made me pay my fare; damn you, I will fix you when I get to Rocky Point to-night.' I said, 'All right.' I then said, 'If you use any more profanity in the car (my wife was within a few feet of him, and several other ladies), you won't go to Rocky Point,' and I then passed on. Just before getting to Rocky Point, I went to my baggage master myself and told him a fellow back there said he was going to fix me when I got to Rocky Point, so I would rather not have any trouble with him; that I did not care to hurt him while I am assisting passengers off, and 'I would be glad if you would put on your civilian coat and hat and come and watch out for me,' and he did it; and as the passengers started disembarking, several of them run out and said, 'Look out for that fellow; he has got a pistol,' and he jumped off the train and Johnson grabbed him and held him until I assisted the passengers off, and I went to him and searched him, and I did it for the safety of myself and the other passengers around. In searching, I simply put my hands over his pockets on the outside and slapped them. I said, 'He has no pistol; turn him loose,' and I signed the train ahead, and the train started, and as I got

161—37

out he rushed up and hit me, and I turned around to defend myself. He was close by and I simply shoved him off and said, 'You go on; I don't want to have any trouble with you.' Brown said he would go nowhere, 'You damn scoundrel, you made me pay my fare,' and he then knocked my cap off about 10 feet and came back at me a second time. I had a lantern (I only have one hand that I can use), and he came back at me with a rush and kicked me and tried to hit me again. I defended myself, and he kept right on fighting, and I finally got one lick at him and knocked him down and got on the train and left. I hit him with my fist. I did not knock him down when I hit him with the lantern, nor break the lantern. The bottom fell out of the lantern and the porter picked it up and I used it from there to Rocky Mount."

Upon this and the other testimony relevant to the inquiry, we do not think that the trial court could properly tell the jury that if they believed the evidence the defendant was in default by reason of having taken hold of the man and searched him as he descended from the car. It is earnestly urged for plaintiff that at the precise time he was seized by the company's employees, he was in the act of alighting from the car with a lot of bundles in one arm, and that he was making no hostile demonstration towards any one and was not in a position to do so, and that one cannot justify an assault upon another with intent to injure him by reason of mere rumors or reports, without more; there must be some overt demonstration amounting to a present menace. As a general or abstract proposition, this may be true; but. it does not correctly state the case presented here.

A conductor of a railroad train is charged with the duty of properly looking after and protecting his passengers, and is held to a high degree of care in this respect. *Penny v. R. R.,* 133 N. C., 221; *s. c.,* 153 N. C., 296. So important is it considered that in the performance of this duty he is clothed to some extent with the powers of a peace officer (Pell's Revisal, 2604a), and if he fails to act in proper instances, and injury results, his very failure may be imputed to the company for wrong. And by reason of these exigent duties, and also of his

right in emergencies to protect himself, a right present in negligence as well as in other cases (*Laidlaw v. Sage,* 158 N. Y., p. 73), a conductor is not always required to await developments or remain inactive until there is some overt act importing a present physical menace either to himself or his passengers; but, in view of all the facts known or as they reasonably appeared to him, he may at times interfere to prevent or forestall violence. *Berry v. R. R., supra;* 2 Hutchison on Carriers, secs. 978-970.

In the case as presented on this appeal, there was no assault on the plaintiff as he alighted from the train with intent to harm him; he was at that time only seized and held until the conductor could search him, which he did by "feeling or slapping on the outside of plaintiff's pockets," followed by an immediate direction to turn him loose, and, restricting our decision to the facts embodied in the portion of the charge excepted to, and without prejudice to the other features of the evidence which may tend to inculpate or excuse the company, we are of opinion that plaintiff is entitled to have the case in this aspect submitted to the jury, to determine whether the conductor, under the principles stated and in view of all the facts as they reasonably appeared to him, was in their opinion justified in seizing and searching the plaintiff as he alighted from the train.

No doubt a contrary view could very well be maintained by referring to plaintiff's evidence or even to the cross-examination of the defendant's witnesses and accepting that as the correct version; but, under our authorities, this is not permissible here. As said in *Dale v. Taylor,* referring to a cross-examination of plaintiff's witness, and in which he had qualified his statement as made in chief: "True, the witness seems subsequently to have qualified his statement, but we are not at liberty to select the more favorable portion of a witness's statement and act on it for defendant's benefit. In a motion of this kind, we have repeatedly held that the evidence making for plaintiff's claim must be taken as true and interpreted in the light most favorable to him," and, as stated by the same principle, defendant's cause is entitled to the same treatment. For

the error indicated the defendant is entitled to have his cause tried before another jury, and it is so ordered.

New trial.

ALLEN, J,, dissenting: If the evidence is considered in the light most favorable to the defendant, I think his Honor was justified in charging the jury that, in any aspect of it, the conductor was guilty of an assault.

It may be that the plaintiff had said he would fix the conductor when he reached Rocky Point, and that some one had told the conductor he had a pistol, but the fact is that he had no pistol, and that he was leaving the car quietly, making no demonstration, when he was seized by two employees of the defendant after he reached the ground, and searched by another.

The two employees had been stationed at the place where passengers alighted, for the purpose of watching the plaintiff, and upon the slightest demonstration could have stopped him; but, acting under the orders of the conductor, they preferred not to wait until there was necessity for action.

The conductor, who testified most favorably for the defendant, said, among other things:

Q. You saw Brown when he was getting off? A. He didn't come down the steps I was on.

Q. You stood there, and didn't you see him? A. Yes, sir; saw him when they made the alarm.

Q. He was not doing anything but moving along quietly? A. That's all I saw him do.

Q. He had bundles in his hands? A. I think he had one bundle, one armful.

Q. Got off the train quietly and peacefully? A. I can't swear what he was doing before.

Q. From your observation, was he doing or saying anything? A. Not at that time.

Q. I ask you, captain, if this man did anything in this world to you—attempt to strike you or offer any violence to you at all—until after you placed him under arrest? A. He had not attempted; no.

I do not believe it can be law that three employees of the

BARNES *v.* R. R.

defendant can seize and search an unarmed passenger as he is leaving the train, quietly and peaceably, without threat or demonstration, and not be guilty of an assault, and these are the facts as I read the evidence.

CLARK, C. J., concurs.