## POWELL v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit.
September 29, 1924.)

No. 2251.

**1. Intoxicating liquors ⬱169—Duty of train conductor to use diligence to prevent unlawful transportation on his train.**

The conductor of a railroad train, especially where by the law of the state he is made a special policeman, with power to make arrests, is charged with the duty of exercising reasonable care and diligence to see that the law is not violated by the illegal transportation of liquor on his train.

**2. Intoxicating liquors ⬤➡236(4)—Conviction of railroad conductor as aider and abettor of illegal transportation held sustained by evidence.**

Conviction of the conductor of a railroad train as aider and abetter in the illegal transportation of liquor *held* sustained by evidence that a number of cans containing whisky, in all 55 gallons, were being carried on his train, and that the cans could readily be seen and the whisky from leakage smelled.

In Error to the District Court of the United States for the Western District of North Carolina, at Greensboro; Edwin Y. Webb, Judge.

Criminal prosecution by the United States against B. F. Powell. Judgment of conviction, and defendant brings error. Affirmed.

William P. Bynum, of Greensboro, N. C., and Waller R. Staples, of Roanoke, Va. (F. M. Rivinus, of Philadelphia, Pa., and Burton Craige, of Winston-Salem, N. C., on the brief), for plaintiff in error.

Thomas J. Harkins, Sp. Asst. U. S. Atty., of Asheville, N. C. (F. A. Linney, U. S. Atty., of Charlotte, N. C., on the brief), for defendant in error.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

WADDILL, Circuit Judge. The plaintiff in error was tried, convicted, and sentenced to pay a fine of $500 under the third count of an information which charged that on the 20th of January, 1923, and for days before and after said date, he, along with Capt. T. A. Snow, in Forsyth county, in the Western district of North Carolina, did unlawfully and knowingly transport for intoxicating beverage purposes, certain intoxicating liquor, to wit, quantities of whisky then and there contained in five gallon lots in closets of the colored coach of Norfolk & Western train in his charge, and that the said T. A. Snow and B. F. Powell then and there well knew the same to be such intoxicating liquor, contrary to the form of the statute in such case made and provided. The defendants appeared in answer to the information, and a severance in the trial was ordered. Plaintiff in error was arraigned and pleaded not guilty. Whereupon a jury was impaneled, the testimony adduced, and after the arguments of counsel, and under the charge of the trial court, returned a verdict of guilty. Plaintiff in error moved to set aside the verdict and grant him a new trial, which motion the court overruled, and entered judgment upon the verdict imposing a fine of $500 against him. From this action the writ of error herein was sued out.

The assignments of error relate to the action of the trial court, first, in overruling the motion of the plaintiff in error, at the close of all the evidence, to return a verdict in favor of the defendant and dismiss the information, because of the insufficiency of the evidence to show that defendant committed either of the offenses charged against him; second, because of the action of the court in entering judgment upon the verdict and imposing the fine mentioned. The case turns entirely upon the sufficiency of the evidence to sustain the jury's finding and to warrant the action of the trial court in entering judgment thereon.

The District Court eliminated from the consideration of the jury the charge of possession covered by the third count of the information, and submitted that of unlawful transportation only to it, and instructed them that the question for their consideration was whether or not the defendant either transported, or permitted, or aided, or abetted, in the transportation of liquor upon his train, and that in order to convict him they must be satisfied beyond a reasonable doubt that he had knowledge of the presence of the liquor and permitted the same to be transported. The facts of the case are briefly these:

Plaintiff in error was a passenger conductor in the employ of the Norfolk & Western Railroad, and had worked in that capacity for 30 years or more. On November 22, 1922, as such conductor he was in charge of local passenger train No. 33, from Roanoke, Va., to Winston-Salem, N. C., known as the night train, which reached the latter place at 9:55 p. m. That a great amount of whisky was being hauled on this train about this time. That at Dennis station, about 12 miles out of Winston-Salem, a federal prohibition officer and a deputy sheriff boarded the train. Upon entering the smoking compartment of the colored coach, they found three or four negroes, and a number of 5-gallon tin cans in burlap and tow sacks. Some of them had holes in them, and the tin cans could be seen. The packages were on the floor of the car under the seats. Whisky had run out of some of these cans on the floor, and the odor of it was very strong in the car. Whisky was also seen running from under the door of the toilet out into the car. The toilet door was closed, but not locked. In the investigation of the toilet, the officers found six cans of liquor, containing 5 gallons each. The door could not be opened wide enough to get in, but upon opening it 10 or 12 inches the

cans could be seen. No words or signs of recognition passed between the officers and the conductor until all the passengers had left the train at Winston-Salem, and no one apparently claimed the liquor. The officers then began pulling the whisky out of the car, for the purpose of getting it off the train, when plaintiff in error approached and inquired if they had the right to take the liquor off, to which the prohibition officer replied that he thought he had, and that he was taking it off anyway. The prohibition officer then went back into the next coach, and there found three one-gallon cans lying up in the hat rack. He asked the conductor if they were his, and he said they were not. Fifty-eight gallons in all, some 8 or 10 gallons more than a barrel, were taken from the train at that time.

The prohibition officer and the conductor were not acquainted with each other. The former said the latter was a little bit harsh in speaking to him when he inquired what he was going to do with the liquor, and that he informed the conductor that he had a search warrant, but did not show it to him, though he showed him his badge as an officer. The plaintiff in error does not deny having the interview in question with the prohibition officer, in respect to his removing the liquor from the train, but says he does not remember it. He testified that he had never knowingly transported liquor on his train, or had anything to do with its transportation, or knowingly permitted any one to carry and transport liquor thereon; that he had no knowledge of the presence of the liquor on this occasion, nor did he know whose liquor it was, or who put it where it was, and knew nothing about it. He further testified that the regular run of his train was from Roanoke, Va., to Winston-Salem, N. C., a distance of 121 miles, leaving Roanoke at 5:10 p. m. and arriving at Winston-Salem at 9:55 p. m.; that the route was largely through an agricultural country, with some small villages; that the passenger traffic was made up of persons carrying packages, handbags, sacks, and baggage of all sorts and descriptions; that there were 33 stations on the run; that traffic at the time was very heavy, and passengers got off and on at practically every station; that with a view of collecting tickets and fares he was required to go through the entire train after each stop; that, upon going through the train, he usually took a seat in the white smoker, being the rear compartment of the colored car, separated generally by a partition and swinging doors, and there made

2 F.(2d)—4

up his report before reaching another station, if possible; that he thought he occupied this position on the night in question; that he passed through the car at least 30 times that evening; that, in starting through, the first thing he did was to open the toilet door to see if any one was inside, but he did not do that all the time; that he had no recollection of seeing any unusual number of tow sacks going into the colored coach on the evening in question.

The case was submitted to the jury on this statement of facts. Under the charge of the court, the jury was instructed that the defendant could not be convicted of either transporting, or permitting or aiding and abetting in the transportation, of liquor on his train, unless they were satisfied beyond a reasonable doubt that he had knowledge of the presence of liquor, and permitted the train to go into Winston-Salem with the liquor upon it. The jury heard all the testimony, had the actors before them, saw their manner and deportment on the stand, and with this clear and comprehensive statement of the law from the judge, returned a verdict finding the plaintiff in error guilty.

[1] On this question of fact, the verdict of the jury is binding on this court, unless the same is not supported by testimony, or is plainly contrary thereto. It cannot be said that the testimony was not sufficient to support the verdict, or that the same was contrary to the evidence. Clearly it was ample to warrant the jury's finding, and the court's action thereon. Indeed, it is difficult to see that any other conclusion could well have been reached, having proper regard to the facts of the case, and the reasonable inferences to be drawn therefrom. Plaintiff in error was the conductor of the train. He had full and complete authority over the same, and to regulate the conduct of passengers and employés. He was charged with the duty reasonably to observe, see, and learn what was going on upon his train. He should have used his sight, his hearing, his sense of smell, and generally to have conducted himself with such degree of diligence as that infractions of the law would not occur in his presence without his knowledge, and he cannot escape the consequences of his neglect in these respects if violations of law actually took place. He should have seen, as far as reasonably lay within his power, that the laws of the country were observed on his train, especially as by the law of the state he was clothed with powers of a special policeman, with full authority to make arrests for offenses committed in

his presence. North Carolina Consolidated Statutes, § 3483; Brown v. Atlantic Coast Line R. Co., 161 N. C. 573, 77 S. E. 777. The liquors found on the train on this occasion were unquestionably being transported thereon in violation of the provisions of the Volstead Act (title 2, §§ 13 and 14 [Comp. St. Ann. Supp. 1923, §§ 10138½ff, 10138½g]), and were subject to seizure by this defendant under the provisions of section 26 of said act (Comp. St. Ann. Supp. 1923, § 10138½mm).

[2] It seems almost incredible that this large quantity of liquor, 55 gallons in all, could have been carried in a coach of this train, through which the conductor passed to and fro every few minutes, without his knowing or in some manner becoming aware of the same. The jury, in our judgment, was fully warranted in inferring that the defendant did have such knowledge, and that he either transported the liquors in question personally, or knowingly aided and abetted others in so doing.

Much was said in argument as to just what a conductor should do in handling liquors found on his train, and the disposition of such liquors and the arrest of persons found in possession thereof. Suffice it to say, respecting these several matters, they one and all become unimportant, as nothing was done with the liquor until the same was taken by the officers, and no person appeared to claim the same.

The judgment of the District Court will be affirmed.

Affirmed.