570 So.2d 823 (1990)
Charlotte K. PORTER
v.
STATE.
5 Div. 616.
Court of Criminal Appeals of Alabama.
August 3, 1990.
Rehearing Denied September 21, 1990.
Certiorari Denied December 14, 1990.
*824 Donald M. Phillips, Lanett, for appellant.
Don Siegelman, Atty. Gen., and Venessa Campbell, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 1900092.
PATTERSON, Judge.
Appellant, Charlotte K. Porter, and her husband, Darrell Porter, were jointly indicted in a two-count indictment for possession of cocaine, in violation of § 13A-12-212, Code of Alabama 1975, and possession of marijuana for other than personal use, in violation of § 13A-12-213(a)(1). The cases were severed, and the state proceeded to trial against appellant. A jury found her guilty of possession of cocaine and guilty of the lesser-included offense of possession of marijuana for personal use. The trial court sentenced her to eight years' imprisonment for the possession of cocaine conviction and twelve months' confinement in the county jail for the possession of marijuana for personal use conviction. The sentences were ordered to run concurrently. Darrell Porter was never tried; the state entered a nolle prosequi as to the charges against him. Appellant appeals, raising two issues.
The state's evidence disclosed that appellant's residence was searched by officers of the Chambers County sheriff's department pursuant to a search warrant. The officers discovered five marijuana plants in the back yard, one marijuana plant in the kitchen, equipment in the barn for growing marijuana, and marijuana in small amounts in various other places in the residence. Also, they found a plastic bag containing cocaine on a shelf in the bedroom closet; various items of drug paraphernalia with *825 cocaine residue in a box in the bedroom; two bottles of inositol in plain view on the bedside table; a set of electronic scales on the floor beside the bed; and packaging equipment, including plastic sandwich bags and "twist" ties, in a box on the floor in the bedroom. A small notepad with "dates, names, amounts, ... amounts in weights and also dollar amounts out to the side with markings of `paid'," along with four one-hundred dollar bills, was found under the mattress. Appellant and her husband were separated at the time, and he did not live at the residence, even though he paid the utility bills and the rent. Appellant apparently had exclusive possession of the residence at the time; however, Mr. Porter was a frequent visitor. The bedroom in which the cocaine was seized was occupied by appellant, and her clothing was in the closet. She told the officers at the time of the search that the marijuana belonged to her and that she grew it for her personal use. She made no statement in reference to the cocaine and did not testify at her trial. In defense she called her husband as a witness and asked him if the cocaine was his. He refused to answer the question, invoking his rights under the Fifth Amendment. She also presented witnesses to show that her husband paid the rent and utility bills for the residence.

I.
Appellant's first contention arises out of the following instructions given the jury by the trial court pursuant to a written request by the prosecution:
"I charge you, also, ladies and gentlemen of the jury, that under the law of the State of Alabama a person is legally accountable for the behavior of another person constituting a criminal offense if with intent to promote or assist in the commission of an offense, one, he or she procures or induces or causes such other person to commit the offense. Or, two, he or she aids or abets such other person in committing the offense. Or, three, he or she has a legal duty to prevent the commission of the offense and fails to make such effort as he or she is legally required to make to prevent it."
The instruction is in the language of the statute defining complicity. Ala.Code § 13A-2-23 (1975).
Appellant objects to the following portion of the court's instruction:
"[A] person is legally accountable for the behavior of another person constituting a criminal offense if with intent to promote or assist in the commission of an offense,... he or she has a legal duty to prevent the commission of the offense and fails to make such effort as he or she is legally required to make to prevent it."
Appellant argues that her mere presence at the time and place of the charged crime of possession of cocaine[1] is not sufficient to make her guilty of the crime. She argues that the instruction gave the jury the false impression that she could be found guilty simply because she did not prevent her husband from committing the crime. She contends that there is no provision in our criminal code that provides that a person can be convicted of possession of a controlled substance by failing to prevent possession by another.
The state does not address this issue, but, relying on A.R.Crim.P.Temp. 14, contends that appellant is procedurally barred from raising this issue on appeal because of her failure to state specific grounds for her objection to the instruction. We do not agree with the state's position. The objection was sufficient to bring the matter to the attention of the trial court and preserve its ruling for review. Appellant's attorney stated the following to the trial court when objecting to the instruction: "[W]hat this says as I told the Court in our charge conference ... is that there is a duty on this defendant to stop someone else from committing the *826 crime. I submit that's not the law in Alabama, and that's the burden that you have put on the defendant in this case."
The commentary to § 13A-2-23 states, in pertinent part, as follows:
"This section formalizes in simple terms the basic principles for determining criminal liability where based upon the behavior of another person or persons. It delineates both the type of action or omission required and the necessary mental state. ...
"....
"... What this section does is define complicity in clear, direct and explicit terms, rather than attempt to accommodate the common-law concepts in defining accessorial liability. The test will be whether the accused with the intent to promote or assist the perpetration of an offense did any of certain enumerated acts in subdivisions (1) or (2) or failed to act (3).
"....
"The three subparagraphs delineate various types of action or omission which might hold one to accountability. Subdivision (1) imposes liability in the situation where the defendant is the party who instigates or starts the complicitous conduct. ...
"....
"Subdivision (2) imposes liability in the situation where one joins in the complicitous action. The classic words `aid and abet' are used. Aiding and abetting comprehends all assistance rendered by acts, or words of encouragement, or support or presence actual or constructive to render assistance should it become necessary, and no particular acts are necessary. ...
"Subdivision (3) places liability in the situation where the defendant who has a legal duty to prevent the crime fails to do so with the intent to further the crime. Although apparently there is no recent Alabama case law on this point, it has been established in other common law jurisdictions. See, e.g., People v. Chapman, 62 Mich. 280, 28 N.W. 896 (1886) (husband who had induced another to seduce his wife stood by and did not interfere with subsequent rape.) This would also comprehend the situation where a night watchman or policeman, if with an intent to aid the perpetrating party, stands by and neglects his duty to intervene. It should be noted that mere negligence in the night watchman situation would be insufficient for liability; one must also have the `intent to promote or assist the commission of the offense.'"
See also Powell v. United States, 2 F.2d 47 (4th Cir.1924); Rasberry v. State, 757 S.W.2d 885 (Tex.App.1988). For a discussion of criminal liability based on omission to act, see J. Hall, General Principles of Criminal Law 190-205, 208-11 (2d ed. 1960); Frankel, Criminal Omissions: A Legal Microcosm, 11 Wayne L.Rev. 367 (1965).
Under subsections (1) and (2) of § 13A-2-23, an affirmative act on the part of the accused is required, while subsection (3) is concerned with the situations in which a person may be criminally responsible for the conduct of another by failing to act. Subsection (3) makes one a party who aids the commission of the offense by inaction. In other words, having a legal duty to prevent commission of the offense, and acting with intent to promote or assist its commission, he or she fails to make a reasonable effort to prevent commission of the offense.
"Most crimes are committed by affirmative action rather than by non-action. But there are a number of statutory crimes which are specifically defined in terms of failure to act; and other crimes which, though not specifically so defined, may be committed either by affirmative action or by failure to act under circumstances giving rise to a legal duty to act.
"....
"(a) Duty to Act. For criminal liability to be based upon a failure to act it must first be found that there is a duty to acta legal duty and not simply a moral duty. As we have seen, some criminal statutes themselves impose the legal duty to act, as with the tax statute and *827 the hit-and-run statute. With other crimes the duty must be found outside the definition of the crime itselfperhaps in another statute, or in the common law, or in a contract."
W. LaFave and A. Scott, Substantive Criminal Law § 3.3 (1986) (footnotes omitted).
There was overwhelming evidence presented by the state from which the jury could have found beyond a reasonable doubt that appellant was in knowing possession of the cocaine. The cocaine, drug paraphernalia, and related items were in her residence, indeed, in her bedroom, and since she was separated from her husband at the time, it was reasonable to infer that she had exclusive possession of the premises, even though her husband was still paying the rent and utility bills. The cocaine and related items were so situated in her bedroom and closet that it would have been almost impossible for her not to have known about them.
The question to be answered here, however, is whether the portion of the instructions objected to was a proper instruction under the facts and law of the case. We think that it was. Appellant's defense to the cocaine charge was to infer that the cocaine belonged to her husband, and this inference was based solely on her husband's refusal to answer a question, when called as a defense witness, as to whether the cocaine belonged to him, by invoking his rights against self-incrimination under the Fifth Amendment, and on his paying the rent and utilities on the residence. Assuming that the cocaine and related items belonged to Mr. Porter, did appellant have a legal duty under the circumstances of this case to prevent the commission of the offense? We say, yes. It was obvious that an illegal drug operation was being conducted on the premises. Cocaine, cutting agents, scales, packaging equipment, lists of names, and money were present. "At common law the owner of premises was under the duty, and upon him rested a primary obligation, to keep his premises from becoming a public nuisance." State ex rel. Bailes v. Guardian Realty Co., 237 Ala. 201, 205, 186 So. 168 (1939).
"What then is the relation and significance of nuisance to the general discussion of omission crimes? First, we may note that, although in discussing the law of nuisance courts talk in terms of a general duty on every member of society to so conduct his activities and so use his property as not to unreasonably annoy other persons, the law of nuisance is by and large limited to situations where the actor or omitter can be expected to realize the effects of his conduct on others. That is, it focuses on affirmative activities and deals with omissions only with regard to the individual's actions, property and things. In this sense the duty to avoid annoyance or injury to others is not fortuitous, but one which is closely assimilable to exercising care in affirmative conduct."
Frankel, supra, at 412-413 (footnotes omitted). A residence maintained as a place of business for selling and storing cocaine on a continuing and recurring basis constitutes a public nuisance. Salzman v. State, 49 Md.App. 25, 430 A.2d 847 (1981). See also, People v. Lot 23, 735 P.2d 184 (Colo. 1987); Everhart v. State, 20 Md.App. 71, 315 A.2d 80 (1974), rev'd on other grounds, 274 Md. 459, 337 A.2d 100 (1975). Clearly the operation here constituted a public nuisance, and appellant, with knowledge of the illegal activities, had a legal duty to prevent her property from being used in such a manner.
Thus, the evidence supported a factual basis on which to present to the jury the legal theory that appellant had a legal duty to prevent the commission of the offense, and with intent to promote or assist in the commission, failed to make an effort she was legally required to make to prevent the offense.
While it would probably be better practice for the trial judge to give more detailed and clarifying instructions when giving a charge concerning crimes of omission, we do not believe that the charge as given in the instant case was improper. However, trial courts should be cautious in giving this charge and should not give it when *828 defining complicity except where there is a factual and legal basis to support it.
Assuming, arguendo, that the giving of the questioned instruction was error, we believe that it was error without injury. We take this view because of the overwhelming evidence of guilt of knowing possession of the cocaine and our belief that it had no bearing on the jury's verdict. A.R. App.P. 45.

II.
Appellant contends that the trial court committed reversible error by sustaining the state's objection to her questions to Investigator Mike Boyd as to the ownership of a box containing drug paraphernalia which was found in appellant's bedroom. The record in this regard, shows the following:
"A. [Witness, Mike Boyd]: Mr. SorrellsI mean, Mr. Radney, I don't know where that box came from.
"Q. [Defense counsel]: Of course you don't. You know that Darrell Porter worked where these kind of boxes are kept. You told me that earlier, didn't you?
"A. Yes, sir.
"Q. And it would be very logical that that's the kind of person that would have brought the box home, wouldn't it, Officer?
"A. One could.
"Q. And it would be very logical that that kind of person would be the one that put this kind of stuff in it, wouldn't it, Mr. Officer?
"MR. SORRELLS [prosecuting attorney]: We're going to object to that.
"MR. RADNEY [defense counsel]: This is cross-examination, may it please the Court.
"MR. SORRELLS: We object to that. It's invading the province of the jury.
"MR. RADNEY: As to what's logical?
"MR. SORRELLS: He's making an argument now, Your Honor.
"MR RADNEY: You're making it back.
"THE COURT: Mr. Deputy, you don't know where that box came from, do you?
"THE WITNESS: No sir, I don't.
"THE COURT: Do you know where this defendant works?
"THE WITNESS: Charlotte?
"THE COURT: Yes.
"THE WITNESS: No, sir.
"THE COURT: But you don't know how that box got to the residence that you searched on that day, do you?
"THE WITNESS: No, sir, I don't.
"THE COURT: All right. Move on.
"Q. I will rephrase my question. It would be very logical for the person who did work where this kind of box is kept would have this stuff there at home in it, would it not?
"MR. SORRELLS: That's asking for a conclusion. We object. It's invading the province of the jury.
"THE COURT: Sustained."
"Trial judges have unlimited discretion to cut off questions on cross examination which are repetitious, concern wholly collateral matters, are irrelevant, or are harassing, annoying, or humiliating." Atwell v. State, 354 So.2d 30, 39 (Ala.Cr.App. 1977), cert. denied, 354 So.2d 39 (Ala.1978). The determination of admissibility of evidence rests within the sound discretion of the trial court and will not be disturbed on appeal absent a showing of an abuse of that discretion. Ballard v. State, 461 So.2d 899 (Ala.Cr.App.1984).
We do not agree with appellant's argument that she was prevented from questioning Boyd about the ownership of the box. Boyd testified that he did not know where the box came from or how it got into appellant's residence, but he stated that Mr. Porter worked at a place where such boxes were kept. The question that the court disallowedi.e., "It would be very logical for the person who did work where this kind of box is kept would have this stuff there at home in it, would it not?" called for speculation and conjecture, invaded the province of the jury, and was, therefore, irrelevant. The ruling of the trial court was proper.
*829 For the above reasons, this case is due to be, and it is hereby, affirmed.
AFFIRMED.
TAYLOR, TYSON and BOWEN, JJ., concur.
McMILLAN, J., concurs specially.
McMILLAN, Judge, concurring specially:
I agree with the majority's decision that there was overwhelming evidence presented by the State from which the jury could reasonably conclude that the appellant was guilty of the possession of cocaine. However, I do not agree with the majority's conclusion that there was sufficient evidence presented to indicate that the appellant's residence constituted a public nuisance. The trial court's instructions, when viewed in light of the entire charge, were proper. Furthermore, as noted by the majority, any possibility that the jury misconstrued the charge would have been harmless error in light of the overwhelming evidence of guilt.
NOTES
[1] The questioned instruction in the instant case could have had no bearing upon the marijuana charge. The state's evidence supporting the conviction for possession of marijuana for personal use was overwhelming and uncontradicted. Appellant admitted to the officers at the time of the search of her residence that the marijuana belonged to her and was for personal use. She, in effect, conceded this at trial.